# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 10, 2016 Session

### IN RE DAMIAN M.

**Appeal from the Circuit Court for Hamilton County**
**No. 15D198      John B. Bennett, Judge**

_____

### No. E2015-02353-COA-R3-JV-FILED-SEPTEMBER 30, 2016

_____

### IN RE JAQUAN B.

**Appeal from the Circuit Court for Hamilton County**
**No. 15D198      John B. Bennett, Judge**

_____

### No. E2015-02365-COA-R3-JV-FILED-SEPTEMBER 30, 2016

_____

This is a dependency and neglect action involving the respondent mother's two minor children, ages five and six at the time the incident giving rise to this action occurred. After it was discovered that the older child suffered, *inter alia*, a liver laceration as a result of physical abuse, the Hamilton County Juvenile Court determined that both children were dependent and neglected in the care of their mother. The juvenile court also determined that the older child was a victim of severe child abuse. The mother perfected a de novo appeal to the Circuit Court for Hamilton County. The circuit court likewise found, by clear and convincing evidence, that the children were dependent and neglected and that the mother committed severe child abuse against the older child. The mother appeals the circuit court's finding of severe child abuse. We have determined that the evidence clearly and convincingly supports the circuit court's findings that the children are dependent and neglected, and that the mother severely abused the older child. Thus, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

David C. Veazey, Chattanooga, Tennessee, for the appellant, Phyllis T.[1]

Herbert H. Slatery, III, Attorney General and Reporter; and M. Cameron Himes, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

Emily Beth Brenyas, Chattanooga, Tennessee, Guardian *ad litem*.

## OPINION

Phyllis T. ("Mother") is the mother of two minor children: Damian M., born February 2009, and Jaquan B., born January 2008. The matter at issue came to light on May 5, 2014, when Jaquan's school teacher observed him acting markedly different. Jaquan would not make eye contact with his teacher and had the hood of his shirt up covering his head. When his teacher asked what was wrong, Jaquan shook his head and would not speak. The teacher noticed that he felt warm to the touch and sent him to the school nurse.

The school nurse observed that Jaquan had a temperature of 104 degrees and a cut on his head with dried blood and dark bruising. Jaquan initially stated that he fell and cut his head, but he later whispered "Mommy." School officials reported the incident to the Chattanooga Police Department to which Officers Mirza Muretcehajic and Giuseppe Troncone responded. Jaquan removed his clothing for the officers and school officials, which revealed dark bruising on his back, groin, chest, abdomen, shoulder, and legs. Thereafter, Jaquan was transported to a local hospital.

Jaquan was admitted to T.C. Thompson Children's Hospital where he was observed by Dr. Annamarie Church and underwent blood testing. Dr. Church examined Jaquan and stated that the bruises he suffered were "not in your typical kid playing areas." When Jaquan's blood tests returned showing an elevation in his liver enzymes—indicating trauma to the liver—Dr. Church ordered a CT scan and ultrasound, which revealed that Jaquan suffered a liver laceration. Dr. Church explained that significant trauma is needed to cause a liver laceration. Specifically, she stated that a laceration of the liver occurs when there is either a force great enough to break ribs or a force to the stomach that goes under the ribs and hurts the liver. Dr. Church further stated that a liver laceration is not an injury that occurs from routine child's play; instead, it is an injury she typically sees in patients following a vehicle accident. After reviewing Jaquan's medical records, Dr. Church stated that it was her diagnosis that the liver laceration was the result of child physical abuse.

---

[1] This court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

Upon questioning by the police, Mother initially told Sergeant Robert Bell that a cat caused the scratches on Jaquan's face and that she did not know how his other injuries occurred. Mother subsequently admitted that she caused the deep bruising on Jaquan's thighs by hitting him with her fists. She also admitted that she hit Jaquan in the face with a belt that morning and caused the marks on the child's face. Mother stated that she hit Jaquan because his room was not clean.

On May 8, 2014, the Department of Children's Services ("the Department") petitioned the Juvenile Court for Hamilton County to declare each child dependent and neglected. The petition was later amended asking the court to make a finding of severe child abuse as to Jaquan. On December 24, 2014, the juvenile court adjudicated the children dependent and neglected and found that Mother committed severe child abuse against Jaquan.[2] Mother appealed the juvenile court's ruling to the Circuit Court of Hamilton County ("the trial court").

The children's cases were consolidated for a de novo trial held on August 20, 2015, and October 1 and 5, 2015. Following the trial, the trial court adjudicated the children dependent and neglected. The court further held that Mother "engaged in severe child abuse of Jaquan" and "that severe child abuse occurred due to the child having sustained serious bodily injury . . . ." Mother timely appealed.[3]

On appeal, Mother concedes that the children were dependent and neglected. Mother raises a single issue for our review that we restate slightly as follows: Whether the trial court erred in finding, by clear and convincing evidence, that Mother engaged in severe child abuse against Jaquan.

## STANDARD OF REVIEW

A child who is suffering from abuse is a dependent and neglected child. *See* Tenn. Code Ann. § 37-1-102(b)(12)(G). A determination that a child is dependent and neglected must be supported by clear and convincing evidence. *See* Tenn. Code Ann. § 37-1-129. Likewise, severe child abuse in a dependency and neglect proceeding must also be supported by clear and convincing evidence. *In re S.J.*, 387 S.W.3d 576, 591 (Tenn. Ct. App. 2012) (citing *Tenn. Dep't of Children's Servs. v. Tikindra G. (In re Samaria S.)*, 347

---

[2] The juvenile court also made a finding of dependency and neglect against each child's respective father. Neither father is participating in this appeal.

[3] Despite having consolidated the appeals, the trial court entered two separate orders. As a result, Mother filed a notice of appeal from each order, and on March 22, 2016, this court entered an order consolidating the appeals for the purpose of briefing and oral argument.

S.W.3d 188, 200 (Tenn. Ct. App. 2011).[4] With respect to the clear and convincing standard, this court has observed:

> "Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." The evidence should produce a firm belief or conviction as to the truth of the allegations sought to be established. "In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is 'highly probable' as opposed to merely 'more probable' than not."

*In re S.J.*, 387 S.W.3d at 587 (internal citations omitted).

This court has further explained its application of the clear and convincing evidence standard as follows:

> Under this standard of proof, the appellate court must "distinguish between the specific facts found by the trial court and the combined weight of those facts." *In re Tiffany B.*, 228 S.W.3d 148, 156 (Tenn. Ct. App. 2007). The facts as found by the trial court are reviewed de novo on the record, presuming those findings to be correct unless the evidence preponderates otherwise. *Cornelius [v. DCS]*, 314 S.W.3d [902,] 906-07 [(Tenn. Ct. App. 2009)]. Findings of fact based on witness credibility are given great deference and will not be disturbed absent clear evidence to the contrary. *Id.* Whether the combined weight of the facts, either as found by the trial court or supported by a preponderance of the evidence, establish clearly and convincingly that the parent committed severe child abuse is a question of law, subject to de novo review with no presumption of correctness. *Id.*

*In re S.J.*, 387 S.W.3d at 587-88 (quoting *In re Samaria S.*, 347 S.W.3d at 200).

Therefore, this court will review the trial court's specific findings of fact in support of its ultimate conclusions de novo with a presumption of correctness pursuant to Tenn. R. App. P. 13(d), and we will review the court's conclusions of law drawn from

---

[4] A finding of severe abuse in dependency and neglect proceedings has serious ramifications not ordinarily at stake in cases of less severe conduct, since a finding of severe abuse can serve as a ground for termination of parental rights. *In re Kaliyah S.*, 455 S.W.3d 533, 537, n.5 (Tenn. 2015) (citing *In re Samaria S.*, 347 S.W.3d 188, 201 (Tenn. Ct. App. 2011) ("[I]f there is a finding of severe child abuse, under the statutes, the Department is relieved of the obligation to use reasonable efforts to reunify the child with the parent, it is more difficult for the parent to regain custody, and one ground for termination of the parent's parental rights is effectively established.")).

those factual findings de novo with no presumption of correctness. *Id.*; *In re Melanie T.*, 352 S.W.3d 687, 696 (Tenn. Ct. App. 2011).

## ANALYSIS

In this case, Mother concedes that Jaquan and Damian were dependent and neglected. Mother only challenges the trial court's finding that she engaged in severe child abuse against Jaquan.

The trial court concluded that Mother engaged in severe child abuse pursuant to Tenn. Code Ann. § 37-1-102(b)(21). As applicable in this case, that section defines severe child abuse as: "The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the *knowing use of force on a child that is likely to cause serious bodily injury* or death. . . ." Tenn. Code Ann. § 37-1-102(b)(21)(A)(i) (emphasis added). Subsection (A)(ii) further provides that "'[s]erious bodily injury' shall have the same meaning given in § 39-15-402(d)." Tenn. Code Ann. § 39-15-402(d) reads:

> "Serious bodily injury to the child" *includes, but is not limited to*, second- or third-degree burns, a fracture of any bone, a concussion, *subdural or subarachnoid bleeding*, retinal hemorrhage, cerebral edema, brain contusion, *injuries to the skin that involve severe bruising* or the likelihood of permanent or protracted disfigurement, *including those sustained by whipping children with objects*.

Tenn. Code Ann. § 39-15-402(d) (emphasis added).

Mother's argument that the trial court erred in finding severe child abuse is essentially two-fold: (1) there is insufficient proof that Mother committed abuse against the child that resulted in the liver laceration and (2) the injuries the child sustained do not constitute "severe child abuse" pursuant to the relevant statutory definition. We consider first whether clear and convincing evidence establishes that Mother is responsible for Jaquan's injuries. We then address whether Jaquan's injuries constitute "severe child abuse" as contemplated in Tenn. Code Ann. § 39-15-402(d).

## I. MOTHER'S ACTIONS

Mother insists there is insufficient proof that she caused the child's liver laceration. Mother acknowledges her confession to Sergeant Bell that she caused the bruising on Jaquan's face and inner thighs and that she struck the child in the face with a belt; however, she insists that she never admitted to hitting the child in the abdomen and that the child never disclosed to anyone being hit in the abdomen. The sum of Mother's argument as to the issue reads as follows:

Even if such a liver laceration were severe child abuse, the Department failed to prove with clear and convincing evidence that [Mother] perpetrated the injury necessary to cause the laceration. The Department would point to [Mother's] supposed confession to Sergeant Bell as clear and convincing proof that she severely abused the child. However, at the time of the confession, [Mother] and the detective understood the child's injuries to be minor in nature. . . . In effect, [Mother] was confessing to misdemeanor child abuse, not felony aggravated child abuse. [Mother] admitted to causing scratches on the child's face and bruises on his thigh. . . . But she never admitted hitting, and the child never disclosed to anyone being hit, in the abdomen, where a liver laceration could occur.

In finding that Mother committed severe child abuse against Jaquan, the trial court stated that it considered all evidence presented, which included, *inter alia*, testimony from Dr. Church, school officials, Sergeant Bell, the Department case manager, and an investigator for the Child Protective Services, among others. Mother did not testify at trial, but invoked her Fifth Amendment privilege.[5] The trial court also set forth its specific findings of fact and conclusions of law on this issue. The ones that are relevant to the issue of severe child abuse read as follows:

> 4. [Mother] initially claimed a cat caused the injuries to Jaquan before admitting [Mother] actually caused the injuries. The Court finds this fact based on testimony from other witnesses. The Court notes that the [Mother] took the Fifth Amendment privilege.
>
> . . . .
>
> 6. Jaquan is reported to have written that his mother pushed him, Jaquan, down the steps.
>
> 7. There was evidence that Damian said [Mother] hit Jaquan in the face.
>
> 8. There were other possible perpetrators that were investigated, but Damian and Jaquan both said [Mother] caused the abuse to Jaquan.
>
> . . . .

---

[5] At the time of trial, Mother's aggravated child abuse charges were pending.

10. [Mother] admitted abuse of Jaquan . . . including admissions of causing bruising on his face and inner thighs and striking Jaquan in the face with a belt, which essentially amounted to a confession. The Court finds that this testimony was uncontroverted. The Court notes that this testimony was from other witnesses repeating what [Mother] said because the [Mother] invoked the Fifth Amendment.

11. [Mother] also admitted to Renee Krehl [Jaquan's former guidance counselor] that Jaquan had been hit.

. . . .

14. Dr. Annamaria Church established that Jaquan had injuries in unusual places, not in typical areas for a child. Evidence of trauma and liver test abnormalities were present. The child . . . underwent diagnostic testing. There was . . . computed tomography evidence of a liver laceration, and such medical evidence was not due, in Dr. Church's opinion, to accidental means or some other underlying medical condition to cause a liver laceration. Dr. Church's primary diagnosis, in her expert opinion, was child abuse.

15. Jaquan reported to Dr. Church that Jaquan was abused or harmed by [Mother].

Therefore, based on the above findings of fact, the Court makes the following conclusions of law:

A. Respondent engaged in severe child abuse of Jaquan as that term is defined by TCA 37-1-102(b)(21)(A)(i) and (ii)(B). The Court also concludes that severe child abuse occurred due to the child having sustained serious bodily injury pursuant to TCA 39-15-402(D).

B. Jaquan is a dependent and neglected child pursuant to TCA 37-1-102(b)(12)(B) and/or TCA 37-1-102(b)(12)(F). The Court concludes that the "and/or" is particularly important because both are independent reasons to find dependency and neglect.

C. Based upon the child abuse by Respondent upon Jaquan, Damian is also a dependent and neglected child pursuant to TCA 37-1-102(b)(12)(B) and/or TCA 37-1-102(b)(12)(F). Further, the Court finds Damian is dependent and neglected in light of the case law found in *In re: Nirvana S.*, No. E2010-01358-COA-R3-JV, [2011 WL 684196] (Tenn. Ct. App. [Feb. 28,] 2011).

D. Pursuant to TCA 37-1-130(a), Damian and Jaquan shall remain in custody of the Tennessee Department of Children's Services, and pursuant to TCA 37-1-130(c), Jaquan shall not be returned to Respondent.

E. The Court finds that not only is it a statutory requirement pursuant to TCA 37-1-130(c), but that it is also in the best interest of the subject children to remain in the custody of the Department of Children's Services, and that it is contrary to the children's welfare to return to the care, custody, or control of the Respondent.

The evidence does not preponderate against the trial court's findings. The evidence at trial showed that Mother was the sole abuser of Jaquan and responsible for his injuries on May 5, 2014. Moreover, this incident was not Jaquan's first report of abuse. In the fall of 2013, Jaquan complained about pain in his lip and told his teacher that Mother "busted [him] in the mouth." In January 2014, after Jaquan returned from Christmas break, he had swollen scars on his face. He initially told his teacher that his dog caused these marks, but later stated that he got hit in the face with a belt. Mother met with school officials regarding the scars on Jaquan's face. Mother first stated that she did not know anything about the injury and then began to cry and said that she did not want them to think of her as a bad mother. Although Mother did not admit to causing the scars, she admitted that someone hit the child and stated that a boyfriend possibly caused the injuries.

Jaquan consistently stated that Mother caused his injuries. He told Officer Muretcehajic that Mother spanked him for not cleaning his room. Jaquan told his school teacher that Mother spanked him and pushed him down the stairs because his room was not clean. At the hospital, he wrote on a piece of paper: "[M]y mom pushed me down the steps because I wouldn't clean my room." Jaquan's little brother, Damian, also made several disclosures regarding the abuse. On the way to the hospital to see his brother, Damian told a Department case manager that Mother hit Jaquan in the face that morning. Damian proceeded to demonstrate how Mother would beat Jaquan with her fist or a belt.

The deposition testimony of Dr. Church presented at trial described the severity of Jaquan's liver laceration as follows:

Q. [C]an liver lacerations be life threatening?

A. It can, depending on the level of laceration. . . . [L]iver trauma is never good and a scar to a liver, you never know what effect that's going to have long term. . . . [I]t's life threatening if it gets bad.

Q. Okay. And if it doesn't become life threatening, are there other harmful results that can occur because of a liver laceration?

A. Yeah. . . . [T]he fact that he had a laceration and the fact that he had this enzyme elevation, it affected his liver function. . . .

Q. [W]hat could cause a liver laceration?

A. Generally, . . . significant trauma. . . .

[I]t takes either a whole lot of force that's enough to break or damage the ribs, which will then go into the liver or you kind of have to have a force from below that's going to get under the ribs and hurt the liver.

. . .

You know, that's the kind of stuff that you see, number one, with kids who have been abused, but you also see it in a bad car accident, that kind of thing. It's not a small amount of force. It's not something that's going to happen in routine play where another kid bumps into him or whatever.

Q. Okay. And have you seen any medical records that indicate that Jaquan was in a car accident?

A. No.

Regarding the bruising on Jaquan's skin, Dr. Church stated that the child had bruises in unusual locations. The deposition testimony of Dr. Church reads:

Q. [W]hen you evaluated the child, did you, in fact, notice bruises and abrasions?

A. I did. . . .

Q. And where were the bruises and abrasions located on the child's body?

A. Kind of all over interspersed . . . . He obviously had like normal kid bruising . . . . Active kids are going to get bruises. For instance, all over his shins. He had some of that going on, but more importantly, he had bruises in unusual locations.

He . . . had the bruising that they had first noticed at the school on his left temporal area, sort of on the forehead to the side was where the bruising

- 9 -

was and there was some on the other side as well as on the right side. There was some -- when I saw him, there was fresh scabbing. There was no active bleeding on top of the bruise on the left forehead area. He had some bruising which was concerning to me that was on his shoulder. I believe it was right shoulder that looked like finger marks and it wasn't like -- sometimes when you see grab marks, it's just little circles in a pattern like the fingertips. This was more elongated. It looked like parts of the finger. So to me it looks like pressure from a grab. . . .

Q. [Y]ou stated that there was some bruising in unusual locations. Can you tell me which locations were unusual?

A. [T]he ones on the head, the one on the shoulder. I remember he had some on his chest and abdomen. . . .

As to the likely source of Jaquan's injuries, Dr. Church's deposition testimony reads as follows:

Q. [D]id you speak to Jaquan about how he incurred these injuries?

A. Yes. I asked him about the head injury. I didn't ask him about every bruise or bump on his body. I tried and that was when he started like playing possum. But he initially did tell me that his mom hit him causing the injury on the left side of the head where there had been -- when I saw it, there was a fresh scab formation and the bruise underneath. . . . I asked him about the scar on his right cheek and he said that his mom had hit him with a belt . . . .

Q. And did the child report to you any other events that could have been the cause of his injuries?

A. No.

. . . .

A. My primary diagnosis was child physical abuse. I was concerned for some neglect as well based on his slimness as well as the skin. It just didn't look like it had been taken care of well. He had the eczema. He had the hypospadias and he had some sort of fibril going on.

Q. And did you have any doubt that his injuries were nonaccidental?

A. I was very comfortable that it was that it was child physical abuse.

Q. And specifically child physical abuse that caused the liver laceration?

A. Yes. . . . I had no other good explanation for that.

Although Mother insists that there is insufficient proof that she caused the child's liver laceration, Mother offered no other explanation for the child's injury. Having carefully reviewed the record before us, we find that the record is replete with credible evidence to support the finding, by clear and convincing evidence, that Mother is responsible for Jaquan's injuries.

We now address Mother's argument that the trial court erred in finding severe child abuse because Jaquan's injuries did not constitute "severe child abuse" as contemplated in Tenn. Code Ann. § 39-15-402(d).

## II. SERIOUS BODILY INJURY TO THE CHILD

Mother insists that she could not have committed severe child abuse as defined by Tenn. Code Ann. § 37-1-102(b)(21) because the child's injury was a "minor" liver laceration. Specifically, Mother states that "[l]iver lacerations can vary in severity from life threatening to no threat at all," and because the child's liver laceration was "merely monitored during [Jaquan's] stay at the hospital and [he] was sent home without further treatment," the trial court erred by finding that the child was a victim of severe child abuse. For the following reasons, we find no merit to Mother's attempt to minimize the injuries inflicted upon Jaquan in an effort to challenge the severe abuse finding.

First, the statute defining "serious bodily injury to the child," Tenn. Code Ann. § 39-15-402(d), is not exhaustive. The list of injuries includes, "*but is not limited to*," the named injuries. *Id.* (emphasis added). It is undisputed that Jaquan suffered a liver laceration, an injury, which Dr. Church opined, occurs as a result of significant trauma that can cause death. Secondly, Mother misconstrues the applicable statute by arguing that the child's liver laceration was not severe enough to support a finding that Mother committed severe child abuse.

A parent commits severe child abuse when there is a "*knowing use of force* on a child that is *likely to cause serious bodily injury or death*[.]" Tenn. Code Ann. § 37-1-102(b)(21)(A)(i) (emphasis added).[6] The statute does not require a child suffer actual serious bodily injury or death before a parent can be found to have committed severe child abuse; rather, the statute requires a finding by clear and convincing evidence that a

---

[6] In contrast, a person commits the criminal offense of aggravated child abuse or aggravated child neglect when the offense of child abuse or child neglect is committed *and* "[t]he act of abuse or neglect results in serious bodily injury to the child[.]" *See* Tenn. Code Ann. § 39-15-402(a).

force was used in a knowing manner, which was likely to cause serious bodily injury or death. *In re Kason K.C.*, No. M2013-01607-COA-R3-JV, 2014 WL 1878767, at *10 (Tenn. Ct. App. May 7, 2014). For example, in the recent case *In re Kaitlin W.*, No. E2015-01553-COA-R3-PT, 2016 WL 2931326, at *9 (Tenn. Ct. App. May 16, 2016), this court found the ground of severe child abuse proven by clear and convincing evidence where the children suffered no physical harm but were exposed to serious dangers, including serious bodily injury or death. *Id.* We expressed that "[i]t was only a matter of luck that [the children] did not suffer serious bodily injury." *Id*. In the same vein, we have affirmed the termination of a mother's parental rights based on her prenatal abuse of cocaine despite the fact that the children at issue suffered no long-lasting effects from the drug exposure. *In re K.P.*, No. E2013-01636-COA-R3-JV, 2014 WL 2442923, at *5 (Tenn. Ct. App. May 28, 2014) (citing *In re Shannon P.*, No. E2012-00445-COA-R3-PT, 2013 WL 3777174 (Tenn. Ct. App. July 13, 2013)).

In this case, the evidence at trial overwhelmingly supports a finding that Jaquan is a victim of severe child abuse. Mother's argument to the contrary is without merit. Moreover, given the abuse and neglect suffered by Jaquan, it is clear that Damian, under Mother's care, is "under such improper guardianship . . . as to . . . endanger the . . . health of such child." Tenn. Code Ann. § 37-1-102(b)(12)(F).

On the record before us, we find clear and convincing evidence to support the trial court's finding that Jaquan and Damian were both dependent and neglected children. We further find clear and convincing evidence in the record to support the trial court's conclusion that Mother committed severe child abuse as to Jaquan as a result of her knowing use of force that was likely to cause serious bodily injury or death pursuant to Tenn. Code Ann. § 37-1-102(b)(21)(A). Accordingly, we affirm the order of the trial court, finding Jaquan and Damian to be dependent and neglected and that Mother severely abused Jaquan.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Mother.

_____
FRANK G. CLEMENT, JR., JUDGE